### GENERAL CHEMICAL CO. v. ALUMINUM CO. OF AMERICA.

(Circuit Court of Appeals, Third Circuit. February 24, 1926.)

No. 3352.

Patents ⬯328.

Patent No. 1,150,415, for manufacture of hydrofluoric acid, *held* not infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Patent infringement suit by the General Chemical Company against the Aluminum Company of America. From a decree dismissing the bill (11 F.[2d] 810), plaintiff appeals. Affirmed.

Charles Neave and Hans von Briesen, both of New York City, for appellant.

Drury W. Cooper, of New York City, Frederick W. Winter, of Pittsburgh, Pa., and Sturges S. Dunham, of New York City, for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. The question in this case is whether the court below erred in dismissing the plaintiff's bill, which charged the defendant with infringement of its patent No. 1,150,415, granted August 17, 1915, to Howard Berkey Bishop, for manufacture of hydrofluoric acid. We are of opinion such alleged error has not been shown, and the entire subject is so fully discussed and so ably vindicated in the

opinion of the court below that we could rest our affirmance thereon. In view, however, of the importance of the manufacture of hydrofluoric acid in the arts, and in deference to the earnest argument of counsel, we briefly add the conclusions to which our own study has led us.

First, we agree that Bishop made a useful and original improvement in hydrofluoric acid making, and we therefore, for present purposes, assume the validity of his patent. Second, the chemical and thermal principles he used were in themselves known, as was also the idea of a continuous process in hydrofluoric making. The scope of originality for him was to find a way to utilize these principles in an inventive, workable, continuous process. Third, in the evolution of his process, he laid before his company two methods. One was to agitate his batch by the turn-over of a revolving drum; the other was to use a stationary circular tank and stir with revolving blades. In both, the vessels inclined and the downwardly traveling charge was subjected to greater progressive heat. The first, the revolving drum process, was the apparatus he described in his specification; the second, the stationary circular tank, with rotating spiral paddles, was in general form, but not in efficiency, the apparatus used by the defendant. His directors, judging from the proofs and the different amounts they allowed him for trial of the two methods, were more favorably impressed with the rotary blade process; but, contrary to their expectations, the subsequent experiments made by Bishop convinced them and him that the rotary blade process was no good, and the rotary drum process was.

We note these facts because, by thus having in view what Bishop's experience had been, we can see what he had in view in making disclaimers during his application's way through the Patent Office. We assume, for present purposes, that in his original claims he meant to cover both processes, but in so doing he met with objections, followed by rejections, and in order to get the claims he was forced to enter a disclaimer of the rotary stirring process, which he did in these words:

"The methods of agitation commonly employed, such as raking or stirring with a rotary stirring blade, will not operate. It is necessary that a particular kind of agitation be chosen, and this type of agitation is now clearly defined by the claims in the words 'continuously breaking up the entire mass of the reacting materials.' The mass must be substantially wholly broken up, and this must be done continuously."

This statement was in accord with the experience he and his directors had had. They had expected the rotary blade method was desirable, and indeed the preferable method; but trials of it had satisfied them that, as stated in the filing wrapper, "stirring with a rotary stirring blade will not operate," and that to successfully operate, as is also there stated, "it is necessary that a particular kind of agitation be chosen, and this type of agitation is now clearly defined by the claims in the words 'continuously breaking up the entire mass of the reacting materials.'" In view of the experience Bishop and his directors had had, it is clear to our mind that this language referred to the two processes of their prior experience, and that he claimed the rotary drum, the one he had found successful, and disclaimed the rotary stirrer, the one he had tried in the balance and found wanting.

In so doing, he surrendered to the public the latter, and it is this released process the defendant has used in his apparatus, and now, when it has been found, contrary to Bishop's experience and statement, "stirring with a rotary stirring blade will not operate," that it will work, we do justice to Bishop now by restricting his "invention in a limited and specific manner," namely, to a revolving drum, and refusing to allow him to cover the "stirring with a rotary stirring blade" which he then disclaimed to get his patent.